

**Signed and Filed: November 09, 2009**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>GEORGE QUINN CHEN,<br><br>                  Debtor.<br>_____<br>E. LYNN SCHOENMANN, as Trustee of the Chapter 7 Estate of George Quinn Chen, Debtor,<br><br>                  Plaintiff,<br><br>v.<br><br>GEORGE QUINN CHEN, an individual, CYNTHIA WONG, an individual, SHANGHAI 1930 LLC, a California limited liability company, and SHANGHAI 1930 RESTAURANT PARTNERS, L.P., a California limited partnership,<br><br>                  Defendants.<br>_____ | Bankruptcy Case<br>No. 03-32157DM<br><br>Chapter 7<br><br><br><br>Adversary Proceeding<br>No. 07-3108DM |

<u>MEMORANDUM DECISION ON COMPLAINT TO REVOKE</u>

<u>DISCHARGE AND TO RECOVER MONEY</u>

<u>I. INTRODUCTION.</u>

E. Lynn Schoenmann, the Chapter 7[1] trustee ("Trustee"),

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037 in effect

initiated this adversary proceeding by filing a complaint (the "Complaint") against George Q. Chen ("Debtor"), his wife, Cynthia Wong ("Wong"), Shanghai 1930 LLC ("Shanghai LLC"), and Shanghai 1930 Restaurant Partners, L.P. ("Shanghai LP") on September 24, 2007. The Complaint sought declaratory relief regarding Debtor's ownership interest in Shanghai LLC, the avoidance of postpetition transfers and revocation of the Debtor's discharge.

More specifically, the Complaint sought a determination that as of July 23, 2003, the date of commencement of this bankruptcy case (the "Petition Date"), the Debtor was the sole member of Shanghai LLC. The Debtor contended that as of the Petition Date, Wong owned a 51% membership interest in Shanghai LLC, by way of transfer from the Debtor. On this claim for relief the parties brought cross motions for summary judgment and the Court granted summary judgment in favor of the Trustee on November 14, 2008, determining that all membership interests in Shanghai LLC were owned by the Debtor as of the Petition Date.

On October 21, 2008, Shanghai LLC and Shanghai LP were eliminated as defendants by way of their summary judgment motion that was not opposed by the Trustee.

On April 20, 2009, the Debtor and Wong, the only remaining defendants, filed a motion seeking reconsideration of the court's

---

prior to October 17, 2005, the effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, April 20, 2005, 119 Stat. 23, as Debtor's case was filed prior to its effective date.

-2-

ruling in favor of the Trustee on the first claim for relief. On August 4, 2009, the court issued its Memorandum Decision on Motion to Reconsider, stating its reasons for denying the motion. That denial will be incorporated into the Final Judgment to be issued.

By the second claim for relief, the Trustee seeks to avoid and recover numerous postpetition transfers made by Shanghai LP (under the Debtor's and Wong's control and direction) to the Debtor and Wong during the period between the Petition Date and the date of sale of the estate's ownership interest in the Restaurant (as hereafter defined) to Wong.

In the third claim for relief, the Trustee seeks revocation of Debtor's discharge.

The matter was tried to the court on June 1 & 2, 2009; appearances were noted in the record. Having considered the testimony of the witnesses, the documentary evidence, and the arguments of counsel, the court now issues it decision, subject to further consideration of the evidence as discussed below.

For the reasons to be explained, on the second claim for relief the court will award Trustee damages in the sum of $38,806.84 against Debtor based upon his receipt of that amount by way of two equity distributions that were property of the estate and in the sum of $729,044.19 based upon proof that he received at least that amount on account of a prepetition loan owed to him that also was property of the estate. The court will award Trustee damages in the sum of no less than $11,000 against Wong

based upon her receipt of a portion of the debt owed to Debtor. It will not award damages against Wong based upon her receipt of two equity distributions.

On the third claim for relief, Debtor's discharge will be revoked.

II. FACTS.[2]

The Debtor filed for chapter 13 relief on July 25, 2003 (the "Petition Date"). The Debtor's case was converted to chapter 11 on August 13, 2003, and Trustee was appointed. Then on July 15, 2005, the Debtor's case was converted to chapter 7; the Trustee continues to serve as trustee. The court entered an order discharging the Debtor on October 26, 2005.

Debtor founded a restaurant known as "Shanghai 1930" in 1997 in San Francisco, California (the "Restaurant"). It has operated ever since, and is owned and operated by Shanghai LP, the general partner of which is Shanghai LLC. Debtor was the 100% separate property owner of Shanghai LLC. Debtor and Wong are also limited partners in Shanghai LP.

On April 25, 2007, Debtor filed a motion seeking the estate's abandonment of his interest in Shanghai LP. His expert appraisal witness concluded that that interest had a nominal or no value as of February 28, 2007.

---

[2] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a). Some of the findings are based upon the parties' Stipulation Of The Parties To Undisputed Facts filed May 29, 2009 (docket # 76).

-4-

In opposition the Trustee located a third-party buyer willing to buy the estate's interest for $25,000. Wong objected to the sale and ultimately purchased the estate's interest for $50,000.

With the approval of the court, Trustee sold all of the estate's interests in Shanghai LP and Shanghai LLC to Wong on November 14, 2007 (the "Sale Date"). The sale did not include any claims held by the estate against the Debtor or Wong with respect to payments made by either Shanghai LP or Shanghai LLC prior to the Sale Date. At issue before the court are activities that occurred between the Petition Date and the Sale Date (the "Subject Period").

As of the Petition Date there was an outstanding amount owed by Shanghai LP to the Debtor of no less than $935,709.98 (the "Chen Loan"). The Chen Loan is reflected in Shanghai's general ledger as a liability account (Loan from George Chen - Account 2300, or "Chen Loan Account"). Most, if not all, of the Chen Loan represents cash advances Debtor made prior to the Petition Date to help the Restaurant deal with cash flow needs, including covering employees' tips, cash purchases, etc. The Trustee was unaware of the existence of or the outstanding balance on the Chen Loan until conducting discovery involving the sale of the estate's interest in Shanghai LP because the Debtor did not list it on his schedules. The Trustee has received no payments from Shanghai or anyone else on account of the Chen Loan.

A. <u>Equity Distributions</u>.

-5-

During the Subject Period, and disregarding management fees and salary payments, $20,880 was paid to the Debtor in December, 2005 and $17,926.84 more in April 2007. The same amounts were paid to Wong on the same dates, and all four payments were distributions on equity interests in Shanghai LP (the "Partner Distributions"). The Partner Distributions to Debtor were property of the estate, as the estate owns the entirety of Shanghai LLC and Debtor's limited partnership interest in Shanghai LP. Trustee did not prove that Wong's Partner Distributions were on account of her own interest as a limited partner in Shanghai LP.

Debtor attempts to justify his Partnership Distributions on the basis of his apparent belief that Trustee told him after entry of his discharge that he could build the Restaurant. The Trustee did not authorize him to withdraw and keep any Partner Distributions as Debtor never asked Trustee about them.

B. <u>Payments on the Chen Loan</u>.

Trustee contends that during the Subject Period the Debtor and Wong caused Shanghai LP to repay the entire balance of the Chen Loan to the Debtor and Wong, in the amount of $935,709.98. She maintains that Shanghai had sufficient cash to make those payments from its cash sales to customers. Debtor contends that these payments to him were on account of post-petition loans or alternatively that the Restaurant lacked sufficient cash to make any payments on the Chen Loan. He contends that the Restaurant's

-6-

outside bookkeeper simply used the Chen Loan Account to post transactions that were not otherwise documented, primarily cash the Restaurant needed to pay weekly to its servers as tips that were given by customers via credit card charges. The bookkeeper, only a few weeks prior to trial, came to realize that cash used to pay those tips to the servers should have been posted as such, rather than shown as advances by Debtor, increasing the Chen Loan. These were described at trial as "unsubstantiated entries." Similarly, she maintains that reductions in the Chen Loan account were not that at all, but were simply incorrect postings.

The Trustee's accounting expert prepared a report that demonstrated that Debtor received transfers during the Subject Period by checks to various payees, including the Debtor, Wong, "cash," and "Shanghai 1930." Some of those payments were debited to sales and sales tax accounts, resulting in a reduction of reported sales.

If the journal entries that resulted in an increase to the Chen Loan account actually reflected reimbursements to the Debtor, such reimbursements would be posted as costs in the "costs of sale" or "operating expenses" accounts.

Although the Chen Loan account balance increased during the Subject Period, the increases were largely based on the unsubstantiated entries made by the bookkeeper on the books. Basically, because she was not aware of the Restaurant's recording of tips, she increased the Chen Loan balance for any otherwise

-7-

Case: 07-03108    Doc# 80    Filed: 11/09/09    Entered: 11/10/09 08:47:16    Page 7 of 15

undocumented receipts.  Actual restaurant sales were reported to her on a reliable point-of-sale system; credit card receipts, representing 95% of all Restaurant revenues, were greater than reported sales because customers included sales taxes and tips; sales taxes were easily calculated and paid by the bookkeeper, but since she did not know about the tips, she assumed the additional cash came from Debtor and posted it accordingly.  In fact, five percent of the Restaurant's sales revenues came from cash-paying customers.

When she had more money on hand than was reported in sales of the Restaurant, the bookkeeper automatically attributed that excess to monies that came from Debtor by posting increases in Account 2300, using it as a balancing account because of the lack of credible documentation.  However, the Debtor, Wong nor the bookkeeper provided documents to substantiate such a practice.

Debtor's claims that he advanced monies to the Restaurant post-petition, but he has offered no documentary evidence or entries in the Restaurant's books and records to support that contention.  The evidence establishes that what the bookkeeper posted as postpetition payments on the Chen Loan should have been booked as expenses.  Further, Trustee's expert examined the records and concluded, convincingly, that Debtor did not make any significant advances to increase the Chen Loan.  They cannot be verified through corresponding bank deposits.

The court is faced with the task of determining whether there

-8-

Case: 07-03108    Doc# 80    Filed: 11/09/09    Entered: 11/10/09 08:47:16    Page 8 of 15

were in fact payments to Debtor and/or Wong on the Chen Loan during the Subject Period. On the Trustee's side there is an expert report (Exhibit 14), modified by and adjusted after accepting the bookkeeper's concessions of erroneous postings of unsubstantiated transactions and cash payments (Exhibit 19); on the Debtor's side there is no expert witness, inconclusive and somewhat confusing financial accounting, and capable counsel's creative arguments and speculation about large amounts of unproven tip receipts that do not amount to evidence. On balance, the preponderance of the evidence supports the court's acceptance of the Trustee's accountant's opinion that <u>at least</u> $729,044.19 of the Chen Loan was paid to Chen or Wong during the Subject Period. The court rejects the Trustee's suggestion that under a last-in, first out theory, Chen should be liable for the entire amount of the prepetition Chen Loan, $935,709.98.

At the minimum, Chen is liable to the estate in this amount of repayments of the Chen Loan. As to Wong, the specific evidence alluded to by Trustee's counsel during argument is found in Exhibit 1, p. 1147. There the court notes a total of $11,000 paid to Wong and booked as payments on the Chen Loan. As such, Wong had no right to that money, has not proven that she was otherwise entitled to it, and must reimburse the estate for it.

Whether Wong received more than $11,000 on the Chen Loan may have been established in the documentary evidence, but the court will not wade through that detailed evidence to find other similar

-9-

entries to make out the case against Wong. But to the extent the admitted evidence does show similar disbursements, the court will permit the Trustee to point out such disbursements and add them to the amount of Wong's liability, as discussed in the Conclusion to this Memorandum Decision.

Postpetition, the Debtor claims that he has had an ongoing relationship with the Restaurant whereby he purchases wine, restaurant supplies and other merchandise and is reimbursed for it. These "reimbursements'' are reflected on the Restaurant's books and records as payments on the Chen Loan. There is no indication to which debt the payment is applied. Accordingly, when payment is made on an obligation, unless there is some indication to the contrary, the practical and ordinary interpretation must "undoubtedly be that payment is to be applied to the part first coming due to be paid." Smith v. Renz, 122 Cal. App. 2d 535, 538 (Cal. App. 1st Dist. 1954).

The Petition Date balance of the Chen Loan of $935,709.98 is an earlier obligation than any postpetition advances, and therefore any pay-down of the Chen Loan must be credited to the prepetition debt. No logical reason has been offered as to why, in the ordinary course of events, it should be approached in inverse order. Therefore, it must be assumed that if the parties intended to "depart from the ordinary" they would have specifically so provided. Id.

-10-

Because general credits on open accounts stand as payments on the oldest items of such accounts, the Debtor's contention that the payments made were post-petition reimbursements for post-petition advances is incorrect. <u>Jessup Farms v. Baldwin</u>, 33 Cal. 3d 639, 190 (Cal. 1983).

The Trustee's counsel asked that all of the amounts repaid Chen Loan during the Subject Period be declared as a joint and several liability of Chen and Wong. Absent facts and law to support such a result, the court will not do that. Wong's liability is limited to distributions to her on the Chen Loan.

C. <u>Revocation of Discharge</u>.

The Debtor was aware of the Chen Loan when he filed his bankruptcy petition, related schedules and statement of financial affairs, but he failed to disclose this substantial debt owed to him. His Schedule B declared no debt owing. It showed $228,141.17 in personal property, $200,000 of which was stock in an unrelated company that has since been sold. Debtor also knew that payments on the Chen Loan and the Partnership Distributions made during the Subject Period belonged to the estate, but he knowingly failed to report them or turn them over to the Trustee.

Debtor also misled the Trustee when he argued that the estate's interest in Shanghai LLP had a nominal value at best and the Restaurant was operating at a loss when in the same year he and received a Partnership Distribution of $17,926.,84, having earlier received a Partnership Distribution of $20,880.

-11-

Case: 07-03108    Doc# 80    Filed: 11/09/09    Entered: 11/10/09 08:47:16    Page 11 of 15

Property of the estate includes money that a debtor has a right to receive. In re Crysen/Montenay Energy Co., 902 F.2d 1098, 1101 (2d Cir. 1990) (debtor's right to collect accounts receivable is "property of the estate"). An outstanding loan that a debtor expects to be repaid is property of the debtor's bankruptcy estate. In re Martin, 141 B.R. 986, 993 (Bankr. N. D. Ill. 1992). The Chen Loan and the right to collect it became property of the Estate as of the Petition Date. All payments made on account of that loan prior to the Sale Date, therefore, belonged to the estate. Debtor and Wong had no right to retain the payments on the Chen Loan that they received.

Similarly, the two Partner Distributions to Chen made prior to the Sale Date constituted property of the estate as well and Debtor has no right to retain them.

The benefit of discharge is reserved for "the honest but unfortunate debtor." In re Holstein, 299 B.R. 211, 233 (Bankr. N.D. Ill. 2003). If section 727(d) is satisfied, the debtor has been less than honest and deserves no discharge. In re Barr, 207 B.R. 160, 165 (Bankr. N.D. Ill. 1997).

To warrant revocation under section 727(d), the Trustee must show that (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge; (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and

-12-

knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee. 11 U.S.C. §727(d)(1)-(2).

Debtor failed to report the Chen Loan on his schedules when his petition was filed and at no point did he amend his schedules to reflect the debt. The evidence shows that the Trustee did not learn of the Chen Loan until it was revealed in through discovery in 2007. This was after the court discharged the Debtor. By then, a substantial portion of the Chen Loan outstanding as of Petition Date had already been paid to the Debtor. Debtor also made no attempt to disclose the 2005 and 2007 Partnership Distributions he received. These facts establish all the necessary elements under both Sections 727(d)(1) and (2).

The Debtor possessed the necessary intent because he procured his discharge by "fraud" or that he "knowingly and fraudulently" failed to schedule the debt, report the payments or deliver the monies to the Trustee. Section 727(d) does not require direct evidence of intent.

The Debtor's fraudulent intent is clear from the fact that he was aware of the omitted assets and knew his failure to list the assets could seriously mislead the Trustee; in the alternative, Debtor acted so recklessly in not reporting the asset that fraud is implied.

Based on the behavior of the Debtor, his discharge should be revoked pursuant to Section 727(d).

-13-

IV. CONCLUSION.

Trustee is entitled to a judgment on the second claim for relief against Debtor in the amount of $729,044.19 (for repayments of the Chen Loan) and $38,806.84 (for the Partnership Distributions), plus costs. She is entitled to judgment against Wong in the amount of at least $11,000, plus costs.

At the time her counsel submits a form of judgment he may also submit (without argument) a list of citations to the appropriate exhibit number, page and entries where additional payments on the Chen Loan to Wong have been documented. The list should include a total dollar amount Trustee contends the judgment against Wong should be. Counsel for Wong will then have ten days to file a designation (also without argument) of any of the Trustee's citations to the record he believes do not show a payment to Wong on the Chen Loan. The court will determine whether Trustee is entitled to a judgment against Wong in excess of $11,000.

On the third claim for relief, Trustee is entitled to a judgment revoking Chen's discharge.

Counsel for the Trustee should submit and serve in accordance with B.L. R. 9021-1 a form of final judgment consistent with the foregoing and for the reasons stated in this Memorandum Decision (with the amount to be awarded against Wong left blank so the

-14-

court may insert an amount) and consistent with the court's denial of the motion to reconsider the grant of summary judgment in her favor on the first claim for relief.

* * *   END OF MEMORANDUM DECISION * * *

-15-